UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:24-CR-00206** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **GARY HAYNES** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR NEW TRIAL (the "Motion") filed by Defendant Gary Haynes (hereinafter, "Defendant") in the above-captioned matter. [Doc. 144]. The Government opposes the Motion. [Doc. 155]. For the following reasons, the Motion is DENIED.

### BACKGROUND

On September 18, 2024, the Defendant was charged in a six-count Indictment with the following crimes: (i) Conspiracy to Engage in Bribery Concerning Programs Receiving Federal Funds; (ii) Bribery Concerning Programs Receiving Federal Funds; (iii) Use of a Facility in Interstate Commerce in Aid of Bribery (two counts); (iv) Conspiracy to Commit Money Laundering; and (v) Obstruction of Justice. [Doc. 1]. The charges in the Indictment stem from the Government's allegations that the Defendant, in his capacity as an Assistant District Attorney in the 15th Judicial District, conspired with others to direct participants in the District Attorney's Pretrial Intervention Program ("PTI") to obtain services from certain companies from which Defendant had agreed to receive kickbacks. [Doc. 1]. The Indictment further alleges that the Defendant persuaded others to destroy evidence of this scheme. *Id.*

The trial of this matter began on September 8, 2025, and ended on September 18, 2025. The Defendant was convicted on all six counts. [Docs. 131, 135]. In the instant Motion, Defendant seeks a new trial on various grounds, all of which are opposed by the Government in its opposition brief. [Doc. 155]. All issues having been fully briefed by the parties, the Motion is ripe for review.

LAW AND ANALYSIS

## I. Federal Rule of Criminal Procedure 33 Standard

Federal Rule of Criminal Procedure 33(a) provides, in pertinent part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a), *cited in United States v. Poole*, 735 F.3d 269, 272 (5th Cir. 2013). Rule 33 recognizes that if a trial court concludes for any reason that the trial has resulted in a miscarriage of justice, the court has broad powers to grant a new trial. *United States v. Scroggins*, 379 F.3d 233 (5th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112, 125 S. Ct. 1062, 160 L. Ed. 2d 1049 (2005). *See also United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004), *citing United States v. McBride,* 862 F.2d 1316, 1319 (8th Cir. 1988) (the interest of justice standard "requires the district court to balance the alleged errors against the record as a whole and evaluate the fairness of the trial."). Nevertheless, motions for a new trial are to be granted with caution, *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004), *cert. denied*, 544 U.S. 978, 125 S. Ct. 1874, 161 L. Ed. 2d 730 (2005), and are generally subject to the harmless and plain error provisions of Rule

52 of the Federal Rules of Criminal Procedure. *United States v. Valencia*, 600 F.3d 389 (5th Cir.), *cert. denied*, 562 U.S. 893, 131 S. Ct. 285, 178 L. Ed. 2d 141 (2010).

## II.  Analysis

The Defendant asserts six categories of errors that he alleges warrant a new trial: (i) improper exclusion of evidence at trial; (ii) improper admission of evidence at trial; (iii) prosecutorial misconduct and improper statements; (iv) other procedural or legal issues affecting fairness; (v) verdict against the weight of the evidence; and (vi) judicial bias and animus toward defendant and defense counsel. The Court considers each category in turn.

### A.  Improper Exclusion of Evidence at Trial

The Defendant argues that the Federal Rules of Evidence were applied "mechanistically and arbitrarily" throughout the trial, in such a manner that Defendant was repeatedly denied an opportunity to present "highly exculpatory evidence" relevant to his intent to join or further conspiracies, the existence of any agreement between alleged co-conspirators, his diminished culpability relative to other alleged co-conspirators, and the credibility of Government witnesses. The Defendant also argues that he was unable to present evidence of the "FBI's animus" toward him in conducting its investigation. Chief among the Defendant's complaints is that he was prevented from introducing digital recordings that demonstrated the prior inconsistent statements of co-conspirators. As evidence of this alleged inequity, the Defendant argues that, while the Government was permitted to introduce approximately 49 audio/video exhibits, he was not permitted to introduce 48 audio-

recorded phone calls obtained from Title III wiretaps on the cell phones of witnesses Dusty Guidry and Joseph Prejean. The Government responds that the Defendant was unable to introduce the testimony in question because he failed to lay a proper foundation for impeachment evidence to be introduced. The Court agrees.

It is well-settled that evidence of a prior inconsistent statement may be admissible to impeach a witness. However, proof of such a statement may be elicited by extrinsic evidence only if the witness on cross-examination denies having made the statement. Fed. R. Evid. 613(b);[1] *United States v. Devine*, 934 F.2d 1325, 1344 (5th Cir. 1991), *citing United States v. Sisto,* 534 F.2d 616 (5th Cir.1976).

Review of the trial transcripts shows that the Defendant was not able to introduce any audio recordings of Dusty Guidry for purposes of impeachment, because each time defense counsel attempted to impeach Mr. Guidry with prior statements, Mr. Guidry did not deny that he had made the statements in question. *See, e.g., United States v. Grubbs*, 776 F.2d 1281, 1287 (5th Cir. 1985) ("We have held, however, that a claim of faulty memory does not constitute an inconsistent statement."), *citing United States v. Balliviero,* 708 F.2d 934, 940 (5th Cir.), *cert.*

---

[1] Rule 613(b) of the Federal Rules of Evidence governs the use of extrinsic evidence of a prior inconsistent statement, as follows:

> **(b) Extrinsic Evidence of a Prior Inconsistent Statement.** Unless the court orders otherwise, extrinsic evidence of a witness's prior inconsistent statement may not be admitted until after the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).

Fed. R. Evid. 613(b).

*denied,* 464 U.S. 939, 104 S. Ct. 351, 78 L. Ed. 2d 316 (1983). *See also United States v. Devine,* 934 F.2d 1325, 1345 (5th Cir. 1991) (Fifth Circuit found no abuse of discretion where district court found that witness's claim of faulty memory did not constitute an inconsistent statement and was therefore inadmissible extrinsic evidence). *See United States v. Balliviero,* 708 F.2d 934, 939–40 (5th Cir.), *cert. denied,* 464 U.S. 939, 104 S. Ct. 351, 78 L. Ed. 2d 316 (1983).

Notwithstanding the Defendant's failure to lay the proper foundation to enter extrinsic impeachment evidence, the Court did permit the Defendant to extensively refresh the memories of certain witnesses from clips of the recorded telephone calls. On each occasion, therefore, the Defendant was able to elicit the substance of the proffered portions of the calls through witness testimony.

Because the Court's rulings in this regard were consistent with the Rules of Evidence – and, specifically, the requirements of Rule 613(b) – the Defendant's argument is without merit.

### B. Improper Admission of Evidence at Trial

The Defendant names five categories of evidence that he argues were improperly admitted at trial, two of which the Court will address: (1) evidence of the Defendant's extrinsic conduct with respect to the Louisiana Department of Wildlife and Fisheries ("LDWF") kickback scheme, and (2) evidence concerning a prior FBI investigation.[2]

---

[2] In addition to these arguments, the Defendant also contends that the Court erred in admitting evidence of: (i) payments from Joseph Prejean to the Defendant; (ii) Defendant's vacations to Columbia and Panama; and (iii) Defendant's ethics training requirements and certification. Because these arguments were perfunctorily and inadequately briefed by the

### 1. Evidence of Extrinsic LDWF Conduct

At trial, the Court allowed evidence that the Defendant attempted to join a similar kickback scheme involving the LDWF. The admission of this evidence followed a written pre-trial ruling by the Court on this issue. [Doc. 72]. Specifically, the Court found that evidence of the Defendant's intent to join the LDWF scheme – which was similarly structured and involved many of the same co-conspirators as the PTI scheme – was probative evidence that the Defendant possessed the requisite intent to join the PTI scheme, and that the probative value of the evidence outweighed the danger of undue prejudice, all pursuant to the standard set forth in *United States v. Cockrell,* 587 F.3d 674, 678 (5th Cir. 2009). *Id.* The Court maintains that its pre-trial ruling was correct, and the evidence presented by the Government at trial was consistent with that ruling.

### 2. Evidence Concerning the Prior FBI Investigation

In the same pre-trial ruling, the Court ordered that the Government would be permitted to introduce evidence of a prior FBI bribery investigation and conviction for the purpose of showing that the Defendant, who was charged with obstruction of justice, was aware that the FBI previously used wiretaps to investigate public corruption in the 15th JDC's district attorney's office. [Doc. 72]. However, the Court ruled that, pursuant to FRE 403, the Government could *not* introduce evidence that the Defendant's wife – Barna Haynes – was convicted of a federal felony in 2012 as a

---

Defendant, this Court need not address them in a substantive manner. *See, e.g., Matter of Green*, 968 F.3d 516, 522 (5th Cir. 2020) ("Arguments given short shrift, such as this one, are forfeited."), *citing Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

result of that prior investigation. In the instant Motion, the Defendant argues that, despite the Court's ruling, the manner in which the Government questioned witnesses about this prior bribery investigation made it clear to the jurors that the subject of that investigation was the Defendant's wife.

The Defendant's argument is conclusory and unfounded. First, as the record shows, the Court excused every potential juror who stated that they were aware that Mrs. Haynes was convicted in a similar scheme, and no witnesses said the name of Mrs. Haynes or otherwise testified or alluded to a familial relationship between the Defendant and anybody involved in the previous case. Nor is there any evidence that any juror in this case actually knew that a defendant in the prior bribery case was the Defendant's wife.

Moreover, the Defendant's failure to object to the makeup of the jury or a specific instance of perceived prejudice at the time it occurred is fatal to this claim. *See, e.g., Puckett v. United States*, 556 U.S. 129, 134, 129 S. Ct. 1423, 1428, 173 L. Ed. 2d 266 (2009) (the contemporaneous-objection rule prevents a litigant from "sandbagging" the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.). The Court took great care to conduct voir dire in a manner that would not prejudice the Defendant by ensuring, among other things, that the jurors had no knowledge that the Defendant's wife had been convicted in a similar scheme. The Defendant presents no evidence that the Court's efforts were unsuccessful.

### C. Prosecutorial Misconduct and Improper Statements

Defendant's next contention concerns Michelle Franques ("Mrs. Franques"), the wife of co-conspirator Leonard Franques and a potential witness with ties to the PTI conspiracy. The Defendant's argument concerning Mrs. Franques is two-fold: first, the Defendant argues that the Government failed to timely disclose exculpatory evidence provided by Mrs. Franques, in violation of *Brady v. Maryland*, 373 U.S. 83, 84, 83 S. Ct. 1194, 1195, 10 L. Ed. 2d 215 (1963); and second, Defendant argues that defense counsel was prejudicially reprimanded in front of the jury for referencing Mrs. Franques's failure to testify as a witness for the Government. The Court addresses each argument in turn.

It is well-settled that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), *cited in United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004). To establish a *Brady* violation, a defendant must make three showings: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Sipe*, 388 F.3d at 477.

The record shows that Mrs. Franques was first interviewed by the FBI on December 8, 2021. [Doc. 128-3]. Mrs. Franques was interviewed again on March 10, 2022. [Doc. 128-2]. Present at this second interview were Assistant United States

Attorney Daniel McCoy, DOJ Trial Attorney Rosaleen O'Gara, Internal Revenue Service Special Agent Holly Deshotel, FBI Special Agents Daniel S. English and Douglas H. Herman, and FBI Forensic Accountant Tiffany Comeaux. According to Agents English and Herman, in her second interview, Mrs. Franques and her attorney sought to clarify and correct aspects of her first statement. Finally, in a third letter, Mrs. Franques typed out the corrections she wished to make to her second statement, which Defendant refers to as the "typed corrections letter." [Doc. 128-4]. It is this document that the Defendant argues that the Government did not produce until August 26, 2025, despite having had it since April 8, 2025.

It is clear, however, that the Government produced the typed corrections letter to the Defendant thirteen days prior to trial. Furthermore, at trial, defense counsel cross-examined Agent Herman extensively about the letter, and the document was referenced at length in Defendant's closing argument, with no suggestion that defense counsel was in any way limited in his use of the information contained therein. Considering the foregoing, the typed corrections letter was not suppressed, and therefore, there can be no *Brady* violation.

Next, the Court considers the Defendant's argument that the Government improperly and falsely accused defense counsel of violating a court ruling when he mentioned, in front of the jury, that Mrs. Franques did not testify for the Government. Specifically, Defendant argues that as defense counsel was finishing his closing argument, he made a reference to the fact that Mrs. Franques did not testify at trial, implying that the absence of Mrs. Franques was somehow disadvantageous for the

Government. [Doc. 149, p. 25]. At the conclusion of defense counsel's closing argument, the prosecutor, who was about to begin his rebuttal argument, asked the Court to instruct the jury to disregard defense counsel's statement as violative of a court ruling.[3] On the record, and to the jury, the Court explained that it was improper for the jury to consider whether or not Mrs. Franques testified for either party, and the jury was instructed to disregard defense counsel's remark. [Doc. 149, pp. 32-33]. The Defendant argues that he was prejudiced by this exchange, because there was,

---

[3] The exchange in question is as follows:

**THE COURT:** Does anybody need a brief break before we hear the final closing? Mr. Walker? Thank you, Mr. Clemons.

**MR. WALKER:** Again, I'm asking the Court, because the defense violated a rule of the Court specifically when he said, "Where is Michelle Franques?" He was not allowed to say that. I'm asking the Court to tell the jury they should disregard that statement because the defense was told he could not -- that was not a subject that could be discussed. And he did exactly what was said he could not do.

**MR. CLEMONS:** Judge, they could have called Michelle Franques. They chose not to.

**MR. WALKER:** That's -- Your Honor, I'm asking –

**THE COURT:** Hold on. Mr. Walker is correct, Mr. Clemons. You were not to regard -- you were not to discuss whether or not Ms. Michelle Franques testified for either the Government or the defense in this case. Okay? That should not come into your consideration.

**MR. WALKER:** And I'm asking you also to ask the defense -- I'm sorry, the jury, to disregard what he just said. He just said, "The Government could call Michelle Franques."

**THE COURT:** I just gave the instruction, Mr. Walker.

**MR. WALKER**: Thank you, Your Honor.

See Transcript of Trial, Day 9 [Doc. 149, p. 32].

in fact, no court ruling that defense counsel could not mention Mrs. Franques's absence as a witness, and the exchange made it appear to the jury that defense counsel had done something wrong.

In reviewing a claim of prosecutorial misconduct, courts must decide whether the misconduct casts serious doubt upon the correctness of the jury's verdict. In doing so, courts consider three factors: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction. *United States v. Hernandez-Guevara,* 162 F.3d 863, 874 (5th Cir. 1998). "Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." *United States v. Stephens*, 571 F.3d 401, 407–08 (5th Cir. 2009), *citing United States v. Holmes,* 406 F.3d 337, 355–56 (5th Cir.2005) (quotations omitted).[4]

Application of the standard to the facts of this case shows no prejudice to the Defendant. Here, Mrs. Franques testified, outside the presence of the jury, that she had been advised by her counsel to plead the Fifth Amendment if she were called to testify at trial and that she intended to follow that advice. [Doc. 148, p. 30]. Defense counsel is correct that the Court issued no express instruction to counsel that he

---

[4] In other cases, the courts apply a two-step inquiry in analyzing claims of prosecutorial misconduct. *See, e.g., United States v. Stephens*, 571 F.3d 401, 408 (5th Cir. 2009) ("First, we assess whether 'the prosecutor made an improper remark.' If so, then we ask whether the defendant was prejudiced."). *See also United States v. Poole*, 735 F.3d 269, 272–73 (5th Cir. 2013) (explaining the two-step rule in the context of district court's grant of a motion for new trial on grounds of prosecutorial misconduct for improper comments during trial). The Court finds these tests functionally similar.

violated. But it is well-settled that a jury is not allowed to draw any inferences, for or against either the prosecution or the defense, from the decision of a witness to invoke the Fifth Amendment privilege. *United States v. Viera*, 819 F.2d 498, 501 (5th Cir. 1987), *on reh'g,* 839 F.2d 1113 (5th Cir. 1988). Accordingly, when defense counsel asked, "Where is Michelle Franques?" the prosecutor asked that the comment be stricken for the purpose of ensuring that the Government was not prejudiced by defense counsel's comment. *See, e.g., United States v. Young*, 470 U.S. 1, 11, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) ("It is clear that counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds. Just as the conduct of prosecutors is circumscribed, [t]he interests of society in the preservation of courtroom control by the judges are no more to be frustrated through unchecked improprieties by defenders.").

All things considered, the Court finds that the prosecutor's comments – while more appropriately made at sidebar – were not improper. But even if they had been, the magnitude of any prejudicial effect was small. The verbal exchange was handled promptly by the Court and counsel were instructed to complete closing arguments. In short, the Court finds the prosecutor's request for a jury instruction did not prejudice the Defendant, nor did it result in an unfair trial.

### D. Motion to Continue and Motion for Bill of Particulars

Defendant next argues that the Court's denial of his August 25, 2025, request for a continuance, and the Court's denial of his August 11, 2025, motion for a bill of particulars denied him a fair trial because he did not have sufficient time to prepare

his defense. But the record does not support his argument. Defendant was indicted on September 18, 2024, and his trial began approximately one year later on September 8, 2025. Although the Defendant complains that he was provided with "staggeringly vast and disorganized discovery," the Government produced the majority of its discovery to the Defendant on October 4, 2024, along with an electronic Excel spreadsheet with an index and description of the discovery provided. Additional discovery and indexes were produced by the Government in late October 2024 and again on January 21, 2025.[5] The magistrate judge granted Defendant's first motion to continue the original trial date of April 7, 2025, [Doc. 29]. However, when the Defendant filed a second motion to continue just two weeks before the trial date and over nine months after receiving initial discovery, the Court denied the motion. [Doc. 41].

"A motion for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of that discretion." *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir. 1976). *See also United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009); *United States v. German,* 486 F.3d 849, 854 (5th Cir. 2007).

Here, as the Government points out, this case was a straightforward bribery case. Although the case was designated as complex, the Defendant's defense team was well-staffed and had almost a full year to prepare for trial. A two-week trial was

---

[5] The Defendant complains that the Government's discovery production – which was produced using an electronic discovery software product called "Relativity" – was disorganized. But the Government responds that the Defendant did not obtain software to review the discovery until sometime between June 29, 2025, and July 9, 2025.

conducted, wherein defense counsel conducted extensive cross-examination of the Government's witnesses, used documents and recordings from discovery to present its defense, and called 21 of its own witnesses to testify. The Defendant has identified no prejudice from the denial of his second motion to continue, and the Court can find none.

The Defendant's argument that he was prejudiced by the Court's denial of his motion for bill of particulars is similarly without merit. A district court's denial of a motion for a bill of particulars is also reviewed for abuse of discretion. *United States v. Marrero*, 904 F.2d 251, 258 (5th Cir. 1990). "In order to prevail on a challenge to the district court's denial of a motion for a bill of particulars, the defendant must establish actual surprise at trial and demonstrate prejudice to his substantial rights." *Id.* at 258. Moreover, "when the information requested is provided to the defendant in some other form, no bill of particulars is required." *Id.*

Here, the Defendant filed his motion for a bill of particulars on August 11, 2025, eleven months after he was indicted. [Doc. 59]. Rule 7(f) of the Federal Rules of Criminal Procedure requires the Defendant to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). As the Court noted in its Order denying the Defendant's motion, the Defendant's delay in filing his motion weighed heavily against him. [Doc. 72, p. 13]; *see also United States v. Dyer*, 136 F.3d 417, 425 (5th Cir. 1998). The Court ultimately denied the motion, finding that the Indictment was sufficient to place Defendant on notice of the charged offenses and allow him to adequately prepare for trial. [Doc.

72]. Further, in its opposition to Defendant's motion for bill of particulars, the Government detailed much of the information requested by the Defendant. And the Government had provided discovery to the Defendant almost a year before trial. Thus, "the information requested [was] provided to the defendant in some other form [thus] no bill of particulars [was] required." *Id.*

### E. Verdict Against the Weight of the Evidence

The Defendant seeks a new trial on grounds the jury's verdict is not supported by the weight of the evidence. A judge's ability to override a jury verdict exists only when the evidence weighs "heavily against the verdict," *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005), and the authority should be exercised only when the verdict may have resulted in a "miscarriage of justice." *United States v. Herrera*, 559 F.3d 296, 302 (5th Cir. 2009). After a review of the entirety of the record in this case, as well as the Court's recollections of the trial testimony, the demeanor of witnesses, and the ability of all parties to comprehensively present their evidence and arguments, the Court finds that the jury's verdict is supported by the evidence. A new trial is therefore not warranted on these grounds.

### F. Judicial Bias and Animus

Finally, and regrettably, the Motion also raises allegations against the Court of "judicial bias and animus." Needless to say, this Court conducts its trials impartially and without bias or animus towards any party or their counsel. And neither in undersigned's independent recollection of the instances cited in the Motion nor by reviewing transcript can the Court find any support for defense counsel's

assertion that the Court exhibited bias or animus towards defense counsel or the Defendant. In this regard, many of defense counsel's characterizations and context given to the portions of the record discussed are misleading – including the tone and tenor of the Court's discussions with counsel, the context of those discussions, and whether such exchanges even took place while the jury was present in the courtroom. Properly viewed, the referenced discussions fall firmly within the duty of the Court to manage the trial and preside over courtroom proceedings. Regardless, the defendant's assertions fall far short of the required showing for a new trial.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's MOTION FOR NEW TRIAL [Doc. 144] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 10th day of November 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE